If it pleases the Court and Counsel, Michael Ross for the Plaintiff Appellant. Mr. Ross. I'd like to focus on the issue of whether the plaintiff was a qualified individual with a disability. What a catch-22 that is. You have to be impaired enough to be disabled but functional enough to do your job. In the record before the Court are four reports from Ms. Barnes' treating physician documenting her condition, severe depression and anxiety, her treatment with medication, her marked impairment in areas like communication and interaction with other people, concentration and focus on tasks, ability to maintain a constant pace of activity and work. These are daily major life activities, clearly. If she comes to work and she says, I need time off for treatment of my condition, I need to adjust my medication, that's a reasonable accommodation. The trial court ruled that she wasn't qualified to do her job and conflated the issue of her attendance with her qualifications in a way that I don't think is proper. As to her qualifications to do the job, I mean, she was employed for ten years. Her performance review just months before termination indicated that she was an exceptional employee and an asset to the company. But isn't the issue here that she was fired for violation of the attendance policy, which was pretty clearly established? Well, that's one of the issues, and I'm happy to talk about that, because it's a misnomer to say that she was not qualified for a job because of her attendance, because she had never been disciplined for attendance issues in the ten years she had worked there prior to leaving for the panic attack and taking the time off following the panic attack and asking for the accommodation. If you look at the letter of termination, which is in the excerpt at 177, you see that it's after she's had her panic attack and gone to the emergency room and is called in unable to work following that, that they do an audit of her time records and find 18 tardies. Most of these tardies are one, two-minute kind of tardies. And they call her and they talk to her. The human resource manager calls her and says, well, we did an audit of the e-time system and discovered these tardies. But she says, the HR manager says to the plaintiff, we're going to call that one occurrence. Now, in their step disciplinary policy and their attendance policy, one occurrence doesn't get you anything in terms of disciplinary action. What happens is if you look at the little chart on the termination letter, you'll see that she has paid time off available for her from the 18th when she has the panic attack up through October 25th. And they call her on October 25th and they say, okay, your time's up. You either come back or you're going to be terminated. And when you look at their chart in the termination letter, you can see it starting on the 25th of October 2005 where it says, occurrence, no PTO, occurrence, no PTO. That's a dissembled moment. If she had come back on the 25th, she'd still be working there today, okay? It was her inability or, from their perspective, refusal to return on the 25th. And, in fact, on the termination letter it says, I also informed you in our conversation on October 25th that if you chose to stay out of work, that you would be subject to termination based on attendance. If the request for accommodation is a leave of absence to regulate your medication, it's nonsensical to say, well, you're being terminated for missing time that you're requesting for your accommodation, okay? She's being terminated for the request for the accommodation, in effect. Well, I thought that there was also the letter, also referred to in the October 28th letter, but I understood that she was advised of her leave status being exhausted and that to deal with her time off she could apply for a 30-day personal leave and that she didn't do that. And that that's, I mean, she had it within her capacity, did she not, to cover the time off that she wanted? They offered it to her and she failed to do that. Well, I don't think, I think it's a factual question of whether she failed to do it or not to do it. She had a policy that if you didn't have paid time off and you needed time off for a medical reason or a personal reason, you could request a 30-day leave of absence, okay? At the time this was all happening around the 25th, Ms. Barnes had contacted the leave manager and asked for the short-term disability. And then in the conversation with the HR manager on the 25th, she said, I need additional time off to treat my condition, to regulate my medication. There was discussion of that 30-day leave of absence in that conversation. And if you look at the chart note from the doctor on that October 25th, the doctor reports that the plaintiff is going to request the 30-day leave of absence and he thinks that's appropriate for her treatment. Okay, so what didn't happen? Well, there's apparently a form that you have to fill out and sign. Now, GE's policy and practice in the past is that the HR manager or the supervisor can complete that form in the absence of the employee. They've done it before. That's where the person made it clear that they couldn't come in and ask them to do it, wasn't it? So is it that the person physically couldn't come in? Yes. Did she make that known to them that she couldn't come in and did she ask them to fill it out for them? No. She did not say, I need you to fill out that form for me because I can't come in. Because I'm looking at the letter on October 20th and it says, if you do need to take an extended period of time off, our policy allows you the option to apply for a 30-day personal leave. Your application for a personal leave must be approved by your team advisor and HR representative. Right. And then she doesn't follow up on that and she doesn't ask for some assistance, if you will, of filling it out for her. So how does that weigh in all of this? Okay. So Ms. Barnes, assume she's confused about the process. She's asking for the short-term disability application. She testified she thought that that was requesting the leave. All right. And the record is facts that support the fact that the application was not sent to her with this letter. Okay. So there's some confusion in the process. If the justification from the employer in terminating this 10-year excellent employee is that she didn't fill out the right form, she didn't jump through the right hoop, even though she has talked to both the benefits coordinator and the HR manager about her need for additional time off to regulate her medication, I think a jury of reasonable people could say that doesn't hold a lot of credence. I mean, we're in a situation where the plaintiff has had a panic attack, had to go to the emergency room, is off actively treating, she is going through the stress test, she's trying to regulate her medication. She is in constant communication with the employer, as documented in the termination letter. There's multiple calls. She's requesting forms. The forms are being faxed back and forth to the doctor's office. She's on the phone with the HR manager. The HR manager talks about the 30-day leave of absence, and the plaintiff says, I need more time to regulate my medication. Okay. All that goes on, and then, oh, we're firing you because you didn't fill out the right form. That, to me, smacks a pretext. If they wanted to keep this person, they would have centered the form and said, oh, you have to fill this out. They would have faxed it to her doctor. They would have asked her to come in and complete the paperwork. They would have done something to basically check an administrative box. I'd like to reserve the rest of my time for rebuttal. You may do so, counsel. We'll hear from GE. Counsel, you may proceed. May it please the Court. Good morning. Kevin Kono for Defendants Appellees. There are several different grounds to affirm the district court's grant of summary judgment on plaintiff's claims in this case. The plaintiff hasn't argued about the workers' compensation retaliation claim. I'll touch on that only very briefly. There's no evidence to support the element of causation on the workers' compensation retaliation claim. The plaintiff has relied in the briefing solely on temporal proximity. That in and of itself is not sufficient. It's absent here, but it cannot overcome the legitimate nondiscriminatory reason of the attendance violations for which the plaintiff here was terminated. On the issue of, and I'm happy to answer any questions, of course, the Court may have on that point. Well, why don't you address the sequence that he talked about? I mean, there is this constant communication between Ms. Barnes and her managers. The October 20 letter does reflect that they knew what she was worried about, and the question was what? Because she didn't, as he said, just fill out a form to put in writing what she had already communicated and the application. I noted that myself. I was looking to see whether there was an attachment to the letter. They didn't send her the application to fill out. So I'm just wondering, why isn't that a question as to whether that really was a pretextual as to whether she was essentially cut off because of a technicality that would be a triable issue? Thank you, Your Honor. There's a lot of ways to answer that question. There's some different subjects. Well, just take one. Okay. First of all, that wouldn't demonstrate pretext in connection with workers' compensation. No, I'm not talking about workers' compensation. Secondly, the representation that there's – that she didn't send the form. It is true that on the October 20 letter it does not say on the footer or below the central line, enclosure. However, plaintiff's testimony is she doesn't recall whether she got it, okay, not that she didn't get it. Ms. Fisher's testimony is that she believes she enclosed it, although she admittedly says she doesn't have a specific recollection of that. So that's a jury question at that point. Well, I think the evidence here, is there enough evidence that the plaintiff – that she didn't get it to raise an issue of fact on that question? Not shown as an enclosure. This is a very sophisticated company. They don't put the enclosure statement. I don't think – you know, neither one has a recollection. So, you know, let's not say that sufficiently. But let's look at the sequence of events that you're asking about. First of all, the attendance issue was on the radar and being disciplined prior to October 18th. The evidence in this record is that Ms. Kloss and plaintiff's supervisor had generated a written warning for plaintiff's attendance problems, and that's at ER 156, prior to October 18th. Now, it's true that that written warning wasn't given to plaintiff because, as the timing of things worked out, plaintiff goes to the ER, and this other sequence of events then takes place. But the testimony is also that on the 19th or the 20th, before Ms. Paga spoke with plaintiff on the 20th, Ms. Klossen informed Ms. Paga of these attendance issues that she had already identified as a disciplinary issue. And it's at that point that Ms. Paga first becomes aware of the attendance. Now, it may be it's not entirely clear when Ms. Paga ran the formal attendance record. Her letter indicates that it's a little bit later, perhaps. But that's just identifying the specifics of these 18 tardies. And it's more than just 18 tardies that predate, in terms of the attendance problems, that predate October 18th. There are two occurrences, absences, I think October 3rd, October 5th, something like that, that are unexcused absences. So she has these additional occurrences as well. And then the plaintiff has conceded that her October 19th absence is an occurrence under the policy. So even treating the 18 tardies as one occurrence, as Ms. Paga wasn't required to do, but did or said she was doing, we're now up to four occurrences. And then if you look at the sequence of events going forward, when you talked about well, Ms. Fisher became aware of the issues, the question is, the discussion, the evidence is the plaintiff is asking about do I have family medical act leave available. And the answer is no, you don't. And for these reasons, you exhausted it previously. There's no evidence that Ms. Paga, or at least Ms. Paga had any information about the specifics of plaintiff's condition. But so then the sequence of events goes forward. Plaintiff talks to Ms. Paga, represents that she's going to be absent for the stress test, that she'd call afterwards, she'd be in on Monday. That's Ms. Paga's testimony that's not contradicted by plaintiff. And she never calls. She doesn't report about the stress test. She doesn't show up for work on Monday. She simply leaves a phone message for her supervisor. That doesn't comply with the policy. She doesn't provide any medical documentation to justify her absences. She never calls again. Ms. Paga contacts her on the 25th. So that's the sequence of events and the complete failure to abide by the attendance policy both before and after October 18th. But I think we're getting ahead of ourselves a little bit in one sense, and that is none of this matters if plaintiff's not disabled under the Oregon statute. And the evidence here is that the district court correctly ruled that plaintiff is not disabled within the meaning of the Oregon statute. And very preliminarily in her reply, plaintiff argues that the ADA amendments have application here. They don't. This is an Oregon statute. The Oregon Supreme Court has construed that statutory language. And so plaintiff's condition must be viewed in light of mitigating circumstances and mitigating measures. And here, plaintiff's own testimony, and I don't know what the four reports that plaintiff has referred to from her doctor, but plaintiff's own testimony is she's had that medication pretty much controls her anxiety, that she'd had only two or three panic attacks during the whole time that she was employed with defendants. And even on those rare instances, they last only three or four hours. She testified that she has occasional smaller bouts with anxiety, and that results in her being tired for some short period of time, a day or two. There's simply no evidence here to find that she is substantially limited in any major activity, even if some doctor's reports say that for some short, temporary period of time, she may have limitations. Those period of times are temporary. They're intermittent. And plaintiff's own testimony is that her condition is controlled by medication. So if you agree with the district court that she's not disabled, you need not reach any of these other questions because she simply doesn't fall under the statute. Attendance is an essential function of the job. We've cited many cases, including Ninth Circuit cases, that establish that. It's stated in the defendant's policy. And here, again, we have attendance issues that predate October 18th. And plaintiff's own testimony, she doesn't dispute those attendance issues, except for, I believe, one tardy she says she doesn't remember. And she admits that none of those attendance issues. But the attendance issues only came to the enforcing authority's attention at the last very late in the game. It's not as if she were a constant problem who had been disciplined. Apparently, there was no feedback. In fact, a lot of those are just one- or two-minute tardies. I'm not diminishing the fact that a supervisor needs to, you know, set a good example and whatever. Well, Your Honor, again, the evidence is that Ms. Claussen was or had prepared a disciplinary action based on the pre-October 18th attendance issues. And not only were they the tardies, but there are two unexcused absences in October. And plaintiff's testimony is that none of those pre-October 18th attendance issues related to her claim disability in any way. Okay. So the district court correctly held that she's not demonstrated that she can meet the essential function of regular and reliable attendance. On the issue of requesting an accommodation, whether she had the form or not is not dispositive. There were multiple discussions of the availability of 30-day leave. And there's no evidence that plaintiff ever said, I, to her employer. I think it's irrelevant that she may have communicated to her doctor that she intended to apply for some form of leave. You have to look at what the employer knew at the time of its decision. And there's no evidence that she ever said, I intend to take advantage of that 30-day leave, that I am going to apply for 30-day leave. Short-term disability forms and the leave of absence are different things. Plaintiff, as a supervisor, knew what the requirement was to apply for the leave. She knew that she had to apply for the leave or else she would fall under the attendance policy. And she simply failed to do it, and she failed to communicate in any way that she was going to do it. Again, when she's speaking to Ms. Paga about these vague statements of, I need time off, she's not specifying how long she needs off. And she's not specifying what her condition is. And the evidence is Ms. Paga was not aware of any claim disability or any anxiety or anything of that nature. I see my time is up. And does the Court have any questions? No questions, Counsel. Thank you. Mr. Ross, you have some reserve time. On the timing of the discipline for attendance, I'll note in the termination letter, the letter, this is ER 177, documents the Saturday, October 22nd message, phone message, then the fact that, quote, you mentioned that you were going to ask Penny Fisher to send you a doctor's disability paperwork. At that point, we ran a report on your e-time and discovered that you had 18 tardies. So the tardy issue came up after she had been out on her panic attack, after she had called in and asked for the disability paperwork. Now, keep in mind that this is an interactive deliberative process that they have to investigate. And the HR manager did not even ask whether she was, in fact, going to turn in the paperwork or not. She just went silent on that. That's in the record at ER 119. Thank you, Counsel. The case just argued will be submitted for decision, and the Court will adjourn.
judges: Goodwin, O'scannlain, Fisher